975 P.2d 1187

**STATE of Idaho, Plaintiff–Appellant,**

v.

**Justeun Dameun FRIZZEL,
Defendant–Respondent.**

**No. 24597.**

Court of Appeals of Idaho.

Jan. 21, 1999.

Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant.

Alan E. Trimming, Ada County Public Defender; Amil N. Myshin, Jr., Deputy Public Defender, Boise, for respondent.

PERRY, Chief Judge

The State of Idaho appeals from the district court's order granting Justeun Dameun Frizzel's motion to suppress evidence discovered during a consensual search of an automobile in which Frizzel was a passenger. For the reasons set forth below, we reverse.

## I.

## BACKGROUND

In late May 1997, a Boise Police officer had cause to perform records checks on Jennifer Smith and Frizzel. The officer learned that Smith's driver's license was suspended. On June 6, 1997, the officer observed Smith driving a pickup in which Frizzel was a passenger. The officer stopped the vehicle based on his suspicion that Smith was driving without a license. The officer confirmed that Smith's license was still suspended and determined that the pickup was registered to a third party not present at the traffic stop.

While speaking to Smith and Frizzel, the officer noticed shotgun shells behind the seated parties, within either person's reach. The officer then asked Smith, as the driver, whether there were any weapons or any drugs in the pickup. The officer also asked Smith for her consent to search the vehicle. Smith gave her consent, both verbally and subsequently in writing.

During the search of the pickup, the officer discovered, behind the passenger seat, a small, blue backpack, which was large enough to hold a weapon. Opening this pack, the officer found plastic bags containing marijuana and $1,600. Frizzel indicated to the officer that the pack was his and went on to accurately describe its contents.

Frizzel was arrested and charged with possession of a controlled substance with the intent to deliver. I.C. § 37–2732(a). Frizzel moved to suppress all evidence seized because, he contended, there was no probable cause to stop the vehicle. At the start of the hearing on Frizzel's motion, defense counsel moved to include, as a basis for suppressing the evidence, the contention that the search was improper; the state did not object. Additionally, the district court, at Frizzel's request and without the state's objection, took judicial notice of the preliminary hearing transcript.

The district court granted Frizzel's motion to suppress. The state appeals.

## II.

## ANALYSIS

### A. Standard of Review

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which were supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson,* 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996).

### B. Scope of Consent

The state contends that the scope of Smith's consent included the pack wherein the marijuana and cash were discovered. The standard for measuring the scope of consent under the Fourth Amendment is that of objective reasonableness, "what would the typical reasonable person have understood by the exchange between the officer and the suspect." *Florida v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991).

The district court considered the preliminary hearing transcript and in its order granting Frizzel's suppression motion, made a finding that the officer had testified that he was looking for a shotgun. On direct examination at the preliminary hearing, the officer testified that, after retrieving the shotgun shells, he "was concerned that a weapon might be in the vehicle. . . . I [the officer] saw a large, blue fanny pack. And this [was] also—it was also large enough to contain a weapon." Later, on cross-examination, the officer stated that when he "first saw them [the shotgun shells] I [the officer] was concerned that there could be a shotgun in the vehicle." At no time during the preliminary hearing did the officer testify that he was looking specifically only for a shotgun.

At the suppression hearing the officer testified that he asked if there were "any weapons," as well as "any drugs" in the vehicle. Additionally, the officer testified that the pack was of sufficient size to hold a weapon. Therefore, the district court's factual finding that the officer's search was limited to a

shotgun or items which could contain a shotgun is not supported by substantial evidence.

■ Moreover, the officer's subjective intent—what the officer thought he was looking for—is of no import. The scope of consent is determined by an objective reasonableness standard. *See Jimeno*, 500 U.S. at 251, 111 S.Ct. 1801. In *Jimeno*, after being informed that the officer suspected that there were narcotics in the vehicle, Jimeno gave consent for the officer to search the car. The Supreme Court held that scope of Jimeno's general consent to search "included consent to search containers within that car which might bear drugs." *Id.* Additionally, in *United States v. Stapleton*, 10 F.3d 582 (8th Cir.1993), the court held that the scope of consent was not exceeded when an officer searched a cellular telephone after receiving consent to search for drugs.[1]

■ In the instant case, the officer testified that he inquired whether there were any weapons or any drugs in the vehicle. The officer then asked for and received Smith's consent to search. Smith, by her consent, did not limit the scope of the search in any manner. A typical reasonable person would have viewed the scope of Smith's consent to include that which could hold either weapons or drugs. Although the district court found that the pack could not have contained a shotgun, the officer testified that it could have concealed a weapon. Additionally, it could have contained drugs. Therefore, we hold that the scope of consent in the instant case was not limited to the search for a shotgun or only containers large enough to conceal a shotgun.

## C. Apparent Authority

Having determined that the scope of Smith's consent included an object as small as the pack, our next inquiry is whether Smith had the ability to consent to the search of that pack. The state contends that Smith possessed apparent authority to consent to the search of the pack. Therefore, the state alleges that the district court erred as a matter of law when it suppressed the evidence on the grounds that only Frizzel could consent to the search of the pack.

■ Under both the United States and Idaho Constitutions, if a police officer reasonably believes that a third party consenting to a search has common authority over the premises or area to be searched, the search will be valid even though it is ultimately determined the consenter had no such actual authority. *Illinois v. Rodriguez*, 497 U.S. 177, 186, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); *State v. McCaughey*, 127 Idaho 669, 674, 904 P.2d 939, 944 (1995). This is known as the doctrine of apparent authority.

The district court found the following relevant facts after the hearing on Frizzel's suppression motion. The pickup which the officer stopped was registered to a third party; however, Smith was driving the vehicle. The officer, while Smith and Frizzel were seated in the vehicle, asked whether there were any weapons or any drugs present in the pickup. Smith, the driver, gave consent to the officer to search. Behind the passenger seat, the officer found the blue pack. Looking inside the pack, the officer found plastic bags containing marijuana as well as money. Frizzel then indicated the backpack was his.

At the suppression hearing, the officer testified that he conducted the search in the following manner. Initially, the officer searched the interior on the driver's side of the pickup. The officer then walked to the passenger's side of the vehicle. During his search of the passenger's side of the truck, the officer discovered the pack behind the seat. After looking in the pack and discover-

---

1. Moreover, even in the absence of an expressed purpose for the search, unless limited, consent to search a vehicle includes containers therein. *See United States v. Snow*, 44 F.3d 133, 135 (2d Cir.1995) (A person who gives open-ended consent to search a car should reasonably expect that readily-opened, closed containers discovered inside the car will be opened and examined.); *United States v. Crain*, 33 F.3d 480, 484 (5th Cir.1994) (An individual who consents to a search of his vehicle should expect that closed containers inside the vehicle will be opened and examined, even where purpose of the search is not apparent.); *United States v. Zapata*, 18 F.3d 971, 977–78 (1st Cir.1994) (A consensual search of a car extended to duffel bags in the trunk, even where object of search was unannounced.).

ing the contraband and cash, the officer questioned Frizzel regarding the contents and ownership of the pack. Frizzel admitted the pack was his and then accurately described its contents.

When an ▮▮▮▮▮▮▮ who ▮as a possessory interest in an item remains silent while a third party with apparent authority gives consent to search that item, it is objectively reasonable for a police officer to conclude that he "had all the consent that was constitutionally required." *Stapleton*, 10 F.3d at 584; *see also United States v. Langston*, 970 F.2d 692, 698 (10th Cir.1992). In *Stapleton*, during a lawful traffic stop, the owner and driver of the car, Golston, consented to the search of the car. The officer eventually searched a portable cellular telephone found on the floorboard of the front passenger's side of the car and discovered contraband. It was later learned that Stapleton owned the telephone. Stapleton remained silent when told of the object of the search and did not indicate the telephone was his property. Thus, the officers could reasonably believe that Golston's consent was all that was required to search the telephone. *Stapleton*, 10 F.3d at 584.

The instant case is virtually identical to *Stapleton*. In this case, the officer asked Smith, the driver of the pickup, for consent to search the vehicle after inquiring as to whether there were any weapons or any drugs present. Frizzel was present when this conversation occurred. Frizzel remained silent as the officer searched the driver's side of the vehicle. Frizzel's silence continued as the officer moved to the passenger's side of the vehicle and began his search. Only after the officer searched the pack and the contraband was discovered did Frizzel claim ownership of it. Thus, the officer had an objectively reasonable belief that Smith's consent to search the vehicle was all that was necessary to allow the officer search the pack. Therefore, although the district court was correct in that only Frizzel had *actual* authority to consent to the search of the pack, we hold that the officer properly relied on Smith's *apparent* authority to consent when the officer searched the pack.

In so holding, we are cognizant of the Idaho Supreme Court's recent decision in *State v. Newsom*, Docket No. 24697, 132 Idaho 698, 979 P.2d 100, 1998 WL 874977 (Dec. 17, 1998) wherein the Court held that the search of a passenger's purse pursuant to a lawful arrest of the driver was unconstitutional. However, as we read the Supreme Court's opinion in *Newsom*, the Court focused on several specific, undisputed, facts in reaching its determination that Newsom's purse was not subject to the *Belton*[2] search incident to arrest rule. In *Newsom*, there was undisputed testimony that the purse was on Newsom's lap, an objective indicia of ownership, as well as an exercise of control. Additionally, it was undisputed that Newsom attempted to remove the purse when she exited, but was directed by an officer to leave her purse in the vehicle. Thus the purse was not left voluntarily or unclaimed by Newsom within the vehicle at the time of the search.

In the instant case, the pack was not within Frizzel's possession, but behind the passenger seat. Thus, there was no indication that the pack belonged to Frizzel, nor did Frizzel attempt to exercise any control over it. Moreover, Frizzel sat silently by while Smith gave general consent to search the truck for any weapons and any drugs, and said nothing as the officer's search moved from the driver's side of the pickup to the passenger's side, where the pack was located. There is no evidence in the record that Frizzel expressed a desire to limit the scope of Smith's consent to search. Only after being questioned regarding the pack, did Frizzel then admit to ownership and accurately describe its contents. Therefore, there is no evidence that the pack was left in the pickup by Frizzel involuntarily. Thus, the Supreme Court's holding in *Newsom* does not dictate a different result under the facts of this case.

### III.

### CONCLUSION

We hold that the scope of consent given by Smith included the pack because Smith, as

---

2. *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).

the driver of the vehicle, gave general consent to search the vehicle after being asked about the presence of any weapons or any drugs. Additionally, we hold that the officer reasonably relied on Smith's apparent authority to consent to the search of the pack because Frizzel remained silent while Smith gave her consent and while the officer conducted the search. Therefore, we reverse the order of the district court granting Frizzel's motion to suppress.

Judge LANSING and Judge Pro Tem SWANSTROM, concur.