13 P.3d 338

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Elena V. ZAITSEVA, Defendant–Appellant.**

No. 24986.

Supreme Court of Idaho,
Boise, December 1999 Term.

Oct. 31, 2000.

Anderson, Kane & Tobiason, Boise, for appellant. Michael J. Kane argued.

Hon. Alan G. Lance, Attorney General, Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

WALTERS, J.

Elena Zaitseva has appealed from a judgment of conviction entered upon a jury verdict finding her guilty of fourteen counts of possession of a forged, blank, or unfinished check. We affirm the judgment.

### BACKGROUND AND PRIOR PROCEEDINGS

Zaitseva was a passenger in a car that was pulled over by Officer Matthew Parsons for travelling in excess of one hundred miles per hour in a seventy-five miles per hour zone. Officer Parsons determined that neither the driver, who was Zaitseva's sister, nor Zaitseva had a valid driver's license. Since neither of the women could drive legally, Officer Parsons asked them if they would like to call someone to come and get the car. They called another sister whom Officer Parsons believed was the owner of the car.

Officer Parsons spoke with the person on the telephone and obtained permission to search the car. While they were waiting for the owner of the car to arrive, Officer Parsons also asked Zaitseva and the driver for consent to search the car. Because of the driver's limited English, Zaitseva translated Officer Parsons' request. The driver nodded, and Zaitseva said that he could search the car.

The driver exited the car for the search, but reached back in to remove a bag from the car. Officer Parsons told the driver to put the bag back into the car and she complied. Both Zaitseva and the driver denied ownership of the bag. Inside the bag, Officer Parsons found identification belonging to Zaitseva and the documents that led to Zaitseva's conviction for possession of a forged, blank or unfinished check.

Zaitseva unsuccessfully attempted to suppress the evidence found inside the bag and was found guilty on fourteen counts. She

was sentenced on each count to a unified sentence of five years with two years fixed. The Court further ordered that the sentences be served concurrently.

## ISSUES

1. Was the search and seizure of the bag constitutional?

2. Was there sufficient evidence presented at trial which would allow a jury to properly conclude beyond a reasonable doubt that Zaitseva was guilty of forgery?

3. Did the prosecutor engage in multiplicitous charging?

4. Did Zaitseva's trial attorney provide ineffective assistance of counsel when he failed to object to improper evidence presented by the State?

5. Did the district court abuse its discretion at sentencing?

## ANALYSIS

### I. Search and seizure of the bag and its contents.

Zaitseva initially argues that the contents of the bag should have been suppressed. She argues that even if the officer had consent to search the car, the scope of that consent was limited; it did not include consent to search the bag and its contents. Zaitseva also argues that the seizure of the bag and its contents was improper because the officer did not have probable cause. Neither of these arguments was presented to the trial court during Zaitseva's motion to suppress.

As Zaitseva points out, she did raise the issue of consent to search the bag and its contents in her written suppression motion and during the suppression hearing. She did not, however, distinguish between the search of the bag and the search of the car itself or raise any distinct issues with regard to the bag. She did not argue that the officer did not have consent to search the car or the bag. The challenge brought before the trial court was limited to whether any consent was the product of coercion. The following excerpt is from closing arguments during the suppression hearing:

> THE COURT: Okay. So let's focus in on this. Would you agree with me [that] the issue here is coercion? The issue here is was this freely and voluntarily a consent of that type, or was it coercion.
> [Counsel for Zaitseva]: Yes.
> THE COURT: Is that the Issue?
> [Counsel for Zaitseva]: Yes.

Consequently, the trial court determined only that the search was conducted pursuant to a valid, uncoerced consent.

Zaitseva now attempts to distinguish between the search of the car and the search of the bag, arguing that the scope of the consent was limited to a search of the car but not of its containers.

■ We find Zaitseva's arguments unavailing. There is no evidence that the consent for the search given by Zaitseva to the officer was conditional or was otherwise impressed with a limitation of any scope or extent. It is well settled that a general, unlimited consent to search a car includes consent to search containers in the vehicle. *Florida v. Jimeno*, 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991); *United States v. Snow*, 44 F.3d 133 (2nd Cir.1995); *United States v. Crain*, 33 F.3d 480 (5th Cir.1994); *United States v. Zapata*, 18 F.3d 971 (1st Cir.1994). See also, *State v. Frizzel*, 132 Idaho 522, 975 P.2d 1187 (Ct.App.1999). Furthermore, by denying ownership of the bag in response to the officer's inquiry prior to the search, Zaitseva essentially relinquished or abandoned any privacy interest in the contents of the bag. *State v. Harwood*, 133 Idaho 50, 981 P.2d 1160 (Ct.App.1999). See also, *State v. Cowen*, 104 Idaho 649, 662 P.2d 230 (1983); *State v. Agundis*, 127 Idaho 587, 903 P.2d 752 (Ct.App.1995). Accordingly, it was not improper for the officer to search the bag in the course of searching the car with the consents he had obtained from the driver, from the apparent owner and from Zaitseva.

We affirm the order denying the motion to suppress.

### II. Sufficiency of the evidence.

■ Where there is substantial evidence from which a rational trier of fact could have

found beyond a reasonable doubt that the crime was committed, this Court will not reweigh that evidence. *State v. Filson,* 101 Idaho 381, 613 P.2d 938 (1980).

■ Zaitseva was convicted of fourteen counts of possession of "a forged, blank and/or unfinished check ... with the intention to fill up and complete said unfinished check in order to utter or pass the same, in violation of Idaho Code Section 18–3605." Zaitseva contends that there was insufficient evidence of intent because no rational trier of fact could believe that the documents found in the bag could be filled up and passed as checks. The documents that Officer Parsons discovered in Zaitseva's bag consisted of computer printouts, photocopies, and fastened-together representations of what appear to be checks in various stages of completion. Some of the "checks" are printed on scraps of paper. Others have markings like "!" and a "@" in the area where the date would be. Some have no color, designs, watermarks, or perforation. Because many of these documents clearly would not have been accepted as checks in their current condition, Zaitseva argues that there was insufficient evidence for the jury to conclude that she intended to pass them.

We disagree with Zaitseva's limited interpretation of the phrase "fill up and complete." Some of the documents found in Zaitseva's possession could not have been passed as checks without more work. However, the documents evidence several stages of what appears to be a process for making checks. Based upon these documents a rational jury could determine that Zaitseva intended to continue the process: to fill up and complete the unfinished "checks" and pass them. There is no other apparent purpose for these documents.

The jury verdict is supported by substantial and competent evidence, and we will not disturb it on appeal.

### III. The prosecutor did not engage in multiplicitous charging.

■ Zaitseva was charged with and convicted of fourteen counts of violating I.C. § 18–3605, which provides:

Every person who has in his possession, or receives from another person, any forged promissory note or bank bills, or *check or checks,* for the payment of money or property, with the intention to pass the same, or to permit, cause, or procure the same to be uttered or passed, with the intention to defraud any person, knowing the same to be forged or counterfeited, or has or keeps in his possession any blank or unfinished note or bank bill or check made in the form or similitude of any promissory note or bill or check for payment of money or property, made to be issued by any incorporated bank or banking company, with intention to fill up and complete such blank and unfinished note or bill or check, or to permit, or cause, or procure the same to be filled up and completed in order to utter or pass the same, or permit, or cause, or procure the same to be uttered or passed, to defraud any person, is punishable by imprisonment in the state prison for not less than one (1) nor more than fourteen (14) years.

I.C. § 18–3605 (emphasis added). Based upon the emphasized language, Zaitseva argues that the possession of more than one check constitutes only one violation of the statute. She contends that the prosecutor engaged in multiplicitous charging by charging her with fourteen counts in this case. We disagree.

The relevant portion of this statute proscribes the possession of "any blank or unfinished note or bank bill or check made in the form or similitude of any promissory not or bill or check ... with the intention to fill up and complete such blank and unfinished note or bill or check." Zaitseva was properly charged with fourteen counts of violating this portion of the statute.

### IV. Was there ineffective assistance of counsel where Zaitseva's attorney failed to object to allegedly improper evidence presented by the State?

Zaitseva argues that her trial counsel was ineffective because he failed to object to the

testimony of a Twin Falls police officer. The officer was allowed to testify, without objection, that two of the documents found in Zaitseva's bag were identical to checks he was investigating in Twin Falls and that they were "valueless." Zaitseva argues that it was objectively unreasonable for her trial attorney to fail to object to this testimony. She contends that the testimony was inadmissible, invited the jury to believe that she had engaged in wrongdoing in Twin Falls, and gave the impression that Zaitseva was involved in some kind of organized crime.

■ In this direct appeal, we do not have sufficient evidence available to properly consider Zaitseva's claims of ineffective assistance.

The question of competency of counsel is an extremely complex factual determination which, in all but the most unusual cases, requires an evidentiary hearing before determination. The resolution of those factual issues for the first time on appeal, based upon a trial record in which competence of counsel was not at issue, is at best conjectural.

*State v. Mitchell*, 124 Idaho 374, 376, 859 P.2d 972, 974 (Ct.App.1993). This Court will not attempt to second-guess the strategy or tactical choices of trial counsel. *State v. Porter* 130 Idaho 772, 792, 948 P.2d 127, 147 (1997). Without evidence regarding the rationale for failing to object to the officer's testimony, we are unable to determine whether the failure to object was based upon strategy and tactics or whether it was based upon some other reason that might either defeat or support a claim of ineffective assistance.

The officer's testimony arguably supports Zaitseva's own testimony at trial. Zaitseva testified that the documents in the bag belonged to someone else. She testified that they were in the bag because they had been blowing around in the backseat and she put them in the bag without examining what they were. The officer testified that the checks that he was investigating in Twin Falls had been passed by Zaitseva's sister. The sister that the officer identified was also the owner of the car. During closing arguments, Zaitseva's trial counsel used the officer's testimony to support Zaitseva's defense.

We cannot consider Zaitseva's claim of ineffective assistance without further evidence, which can only be developed in a separate proceeding for that purpose.

**V. The district court did not abuse its discretion by sentencing Zaitseva to two years fixed with three years indeterminate.**

■ Zaitseva contends that the trial court abused its discretion by sentencing her to incarceration for two years without retaining jurisdiction. We disagree.

■ When reviewing whether a sentence is excessive, we review all the facts and circumstances in the case and focus on whether the trial court abused its discretion in fixing the sentence. *State v. Broadhead*, 120 Idaho 141, 814 P.2d 401 (1991), *overruled on other grounds by State v. Brown*, 121 Idaho 385, 825 P.2d 482 (1992)

Where reasonable minds might differ as to the sufficiency of time of confinement, the discretion vested in the sentencing court in imposing sentence will be respected. Our task is one of deciding whether a clear abuse of discretion has been affirmatively shown and the question is whether the sentence is unreasonable upon the facts of the case. To establish that the sentence imposed was improper, the defendant must show that in light of the governing criteria, [the] sentence was excessive under any reasonable view of the facts.

*Id.*, at 145, 814 P.2d at 405 (citations omitted). The governing criteria focus on the four objectives of sentencing: (1) the protection of society, (2) the deterrence of crime both generally and specifically, (3) the possibility of rehabilitation, and (4) punishment or retribution for wrongdoing. *State v. Wolfe*, 99 Idaho 382, 384, 582 P.2d 728, 730 (1978).

The trial court properly considered the objectives of sentencing. During sentencing, the court explained the reasons for the sentence imposed:

This case disturbs me in the fact that the forged checks appear to be part of a sophisticated process of producing checks

from a corporation through a series of computer programs, specialized paper, so that it appears that these are negotiable instruments or checks issued by that company.

To put it more simply, this is not a forgery case in which the defendant placed her name or an amount on a check that may have been taken from a family member or friend. These forged instruments were, as I said, produced in a sophisticated operation.

. . .

So as I evaluate those factors, certainly the factors set forth in State v. Toohill [, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982)]. I come back to certainly protection of society, not in the standpoint of some type of criminal violence, but from the standpoint of the very integrity of our monetary system, our commercial system that we have in place.

. . . The court does not believe that probation or retained jurisdiction is appropriate in this case, in light of, again, the sophisticated nature of this.

Under the circumstances of this case, the sentences imposed by the trial court are not unreasonable.

## CONCLUSION

The judgment of conviction and the imposed sentences are affirmed.

Justices SILAK, SCHROEDER and KIDWELL concur.

Chief Justice TROUT, dissenting.

Because I believe that Zaitseva committed only one crime, the possession of checks to be forged, I must respectfully dissent from the Court's decision. According to the Court, Zaitseva can be charged with fourteen counts of violating I.C. § 18–3605 because the statute uses the word "check" rather than "check or checks." However, a charge of multiple counts of violating a statute is appropriate only where the actus reus prohibited by the statute has been committed more than once. State v. Major, 111 Idaho 410, 415, 725 P.2d 115, 120 (1986), (citing Wilkoff v. Superior Court, 38 Cal.3d 345, 211

Cal.Rptr. 742, 696 P.2d 134, 137 (1985)). In addition, the test adopted by this Court to determine whether a course of criminal conduct should be divided or aggregated asks "were the items possessed as a part of 'a single incident or pursuant to a common scheme or plan reflecting a single continuing [criminal] impulse or intent.'" Major, 111 Idaho at 414, 725 P.2d at 120 (citing State v. Lloyd, 103 Idaho 382, 383, 647 P.2d 1254, 1255 (1982)).

In Major, this Court was faced with the question of whether possession of multiple items of stolen property which were recovered both on and outside the Nez Perce Indian Reservation constituted a single offense or two separate offenses. This Court determined Major committed only one offense of possession of stolen property where the property was stolen at the same time from one individual, and even though one item was pawned separately and the stolen items were recovered both on and off the reservation, the possession of the items was found to be part of "a single incident" and "pursuant to a common scheme or plan reflecting a single, continuing [criminal] impulse or intent. . . ." Id.

Applying the Major test to the facts presented here, Zaitseva should only have been charged with one count of forgery. Zaitseva was charged with violating I.C. § 18–3605, specifically, with being in possession of blank or unfinished checks with the intent to fill out those checks in order to defraud someone. Thus, the actus reus of the crime is the possession. Clearly, all of the checks were possessed at the same time and, according to the district judge, appeared to be part of a single plan to forge checks from the company listed on the checks. Because Zaitseva possessed the forged checks pursuant to a common scheme or plan reflecting a single, continuing criminal impulse or intent, Zaitseva should have only been charged with one count.